# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CURTIS PENDEGRAFT, #B28676, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 17-cv-00447-SMY ) |
| J. CAMPANELLA, CAMILLE ETIENNA, LINDA RUNGY, NURSE STAFFORD, KEVIN MURPHY, M.D. ADAMS, DOCTOR ALPHONSO DAVID, NURSE PRACTITIONER BLAKE, and WEXFORD HEALTH CARE SERVICES, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**YANDLE, District Judge:**

Plaintiff Curtis Pendegraft, an inmate who is currently incarcerated at East Moline Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 against officials at Vienna Correctional Center ("Vienna") and Shawnee Correctional Center ("Shawnee") who allegedly denied him adequate medical care for a serious bone infection, known as osteomyelitis, in his right shoulder and hip in 2015-16. (Doc. 1, pp. 1-14). He seeks monetary relief against all of the defendants. (Doc. 1, p. 15). Plaintiff is pursuing similar claims in *Pendegraft v. Kreke*, No. 15-cv-00816-NJR-DGW (S.D. Ill. 2015).

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

1

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives preliminary review under this standard.

## The Complaint

During his incarceration at Vienna in 2015, Plaintiff requested treatment for an infection in his right shoulder. (Doc. 1, pp. 7-14). He was seen repeatedly by health care staff at Vienna and neighboring Shawnee. *Id*. When Plaintiff refused to pay the $5 copayment for each new appointment, he was denied treatment. *Id*. Plaintiff was eventually diagnosed with osteomyelitis, a serious bone infection in his right shoulder and hip that necessitated long term treatment with antibiotics. *Id*.

Plaintiff offers a detailed account of the events giving rise to this action in the Complaint. (Doc. 1, pp. 7-14). On July 18, 2015, he submitted a written request for treatment of an infection

in his right shoulder. (Doc. 1, p. 7). He was seen by a nurse in Vienna's health care unit ("HCU") on July 21, 2015. *Id*. The nurse examined Plaintiff and determined that he required further evaluation by a doctor. *Id*. In the meantime, he was given ibuprofen (200 milligrams) and a one-week lay-in. *Id*. Plaintiff paid a $5 copayment on this date. *Id*.

He returned to the health care unit on July 24, 2015. (Doc. 1, p. 7). Instead of seeing a doctor, Plaintiff was seen by a nurse practitioner. *Id*. Nurse Rungy ordered x-rays and prescribed him more ibuprofen (400 milligrams) for severe pain. *Id*. However, she did not evaluate Plaintiff for emergency treatment at a hospital, treat his infection with antibiotics, isolate him from other inmates or follow up on the order for x-rays.[1] (Doc. 1, p. 8).

On July 30, 2015, Plaintiff was sent to Shawnee for x-rays. (Doc. 1, p. 8). Plaintiff told the x-ray technician about his history of bone infections. *Id*. Following the x-rays, Plaintiff met with Nurse Stafford. *Id*. Plaintiff also told the nurse about his infection, his history of treatment at Vienna and a "huge egg-shaped lump" on his right shoulder. *Id*. He complained of significant pain and difficulty raising his arm. *Id*.

Before treating him, Nurse Stafford required Plaintiff to sign for the $5 copayment. (Doc. 1, p. 8). He explained that he had already paid a copayment at Vienna and would not pay it again. *Id*. The nurse instructed Plaintiff to sign a form indicating that he refused treatment. *Id*. She threatened him with disciplinary action if he chose not to sign it. *Id*. Plaintiff explained that he was not refusing treatment; he was simply declining to pay for it a second time. *Id*. Plaintiff then signed the form. *Id*. The nurse told him that he "was done." *Id*. When Plaintiff requested bandages for a wound on his side, the nurse denied his request. *Id*. Plaintiff returned to his housing unit at Vienna and began preparing an emergency grievance. *Id*.

---

[1] Plaintiff alleges that he has been diagnosed with Hepatitis C and should have been isolated from other inmates. (Doc. 1, p. 8).

He was called to Vienna's HCU again on July 31, 2015. (Doc. 1, p. 8). Rather than meeting with a doctor, Plaintiff was seen by Nurse Kevin Murphy. *Id*. Plaintiff indicated that his shoulder was now "very bad." *Id*. He described a "lot of pain" and an inability to use his right arm. *Id*. He asked Nurse Murphy for bandages for the wound forming on his side. *Id*. When Nurse Murphy instructed Plaintiff to first sign for payment of his services, Plaintiff again refused to do so. *Id*. Nurse Murphy would not treat him. *Id*. Plaintiff returned to his housing unit without bandages. *Id*. He added this incident to the emergency grievance he was preparing for Warden Campanella. *Id*.

On August 4, 2015, Plaintiff showed Officer Koehler his shoulder. (Doc. 1, p. 9). He asked the officer to contact a member of the prison's medical staff or a lieutenant for immediate evaluation of the wound. *Id*. He described his history of treatment to the officer. *Id*. The Complaint mentions nothing about the officer's response. *Id*. Plaintiff had a similar conversation with Officer Gurley on August 6, 2015, but does not describe the officer's response. *Id*. When he had the same conversation with Officer Ellis on August 7, 2015, the officer agreed to "place a call on Plaintiff's behalf." *Id*. It is unclear whether this was done. On August 9, 2015, Plaintiff complained about his infection and pain to Officer Jaco and asked him to please contact the HCU on Plaintiff's behalf. *Id*. The officer agreed to do so, but was informed that Plaintiff could not be seen despite the fact that a doctor was working in the HCU for four hours on that date. *Id*.

On August 10, 2015, Plaintiff went to the medical line to ask for bandages. (Doc. 1, p. 9). He saw the nurse who initially evaluated him on July 21, 2015. *Id*. He showed her his wound and explained that it remained untreated. *Id*. He complained of pain and infection. *Id*. Plaintiff also complained that he could no longer use his arm. *Id*. The nurse told him that there

was nothing she could do." *Id*. She gave him five bandages for the wound that was forming on his hip. *Id*.

On August 11, 2015, Plaintiff was again called to the HCU to discuss three emergency grievances that he filed on July 27th, July 31st, and August 9th to complain about the denial of medical care. (Doc. 1, pp. 10, 13-14). There, he met with Penny George and Warden Hillyard. (Doc. 1, p. 10). Plaintiff informed the two prison officials about his numerous requests for treatment, the staff's denial of treatment based on his refusal to pay an additional $5 copayment for services and the spread of his infection. *Id*. After hearing Plaintiff's statement, Warden Hillyard observed that Plaintiff "may very well have to have surgery." *Id*. George then escorted Plaintiff to the front of the HCU and showed the nurses his shoulder wound. *Id*. Plaintiff was instructed to wait on a bench while George talked to the nurses behind closed doors. *Id*.

Plaintiff was then taken to Heartland Regional Medical Center's Emergency Room in Marion, Illinois. (Doc. 1, p. 10). The shoulder wound was drained after x-rays and a culture were taken. *Id*. Officers Choates and Dent took photographs of the wound. *Id*. Plaintiff was then sent back to Vienna, where he spent several hours in the HCU waiting for prescriptions before returning to his housing unit. *Id*.

On August 12, 2015, Plaintiff returned to the HCU to have his bandage changed. (Doc. 1, p. 10). He was instead admitted to the HCU and remained there for three- to five days. *Id*. On August 16, 2015, Doctor Adams examined him and indicated that "it looked much better." *Id*. Without reviewing Plaintiff's medical records or x-rays, Doctor Adams released Plaintiff back into the general population with an open wound still on his shoulder. (Doc. 1, pp. 10-11).

Plaintiff returned to the HCU nine days later on August 25, 2015. (Doc. 1, p. 11). Doctor Williams met with him and informed him for the first time that he had a bone infection

known as osteomyelitis. *Id*. Plaintiff's prescribed medication was "not strong enough for this type of infection." *Id*. The doctor intended to review Plaintiff's medical records and make a decision regarding more aggressive treatment of the infection. *Id*. However, Plaintiff's medical records from Heartland Regional could not be located, so Plaintiff was sent back to his housing unit. *Id*.

He returned to the HCU later the same day. (Doc. 1, p. 11). Plaintiff was informed that his medication would be increased from 100 milligrams to 300 milligrams due to the seriousness of the infection. *Id*. Plaintiff also learned that he would receive medication intravenously. *Id*.

On August 27, 2015, Plaintiff was taken to Shawnee's HCU for a PICC line and ten weeks of antibiotic treatment. (Doc. 1, p. 11). During this time, he received no mail. *Id*. The infection persisted. *Id*. Plaintiff was taken to Herrin Hospital for an MRI on October 23, 2015. *Id*. The MRI revealed a lingering infection in Plaintiff's right shoulder. *Id*. Even so, the PICC line and antibiotic treatments were discontinued on November 2, 2015 and no further antibiotics were administered. *Id*.

Plaintiff next met with an orthopedic surgeon on November 13, 2015. (Doc. 1, p. 11). Before a decision was made about surgery, the specialist wanted to review Plaintiff's medical records. *Id*. Doctor Alphonso, a physician at Shawnee, met with Plaintiff three days later. *Id*. Doctor Alphonso stated that he would speak with the specialist, but failed to do so. *Id*. The doctor also failed to isolate Plaintiff from the general prison population. *Id*.

Although Plaintiff was scheduled for another appointment with an orthopedic specialist on December 7, 2015, Warden Etienna (Shawnee's warden) cancelled the appointment for reasons that are not disclosed in the Complaint. (Doc. 1, p. 12). As of December 8, 2015, more than a month after all treatment was discontinued, Plaintiff continued to suffer from a persistent

infection in his right shoulder and drainage of the wound on his hip.  *Id*.  No allegations address the care he was provided during the subsequent four months.  (Doc. 1, pp. 7-14).

However, on April 9, 2016, Plaintiff was allegedly seen in Shawnee's HCU.  (Doc. 1, p. 12).  He was diagnosed with Methicillin-resistant Staphylococcus aureas ("MRSA").  *Id*.  Nurse Blake and Doctor Alphonso were aware of this diagnosis and ignored the prison's policy mandating isolation of inmates with this type of infection from the general inmate population.  *Id*.  Instead, they instructed Plaintiff to return to his housing unit and placed no restrictions on his ability to work in the prison dietary unit.  *Id*.

Plaintiff now asserts a claim of deliberate indifference against all of the defendants, based on their failure to adequately and timely treat his osteomyelitis and MRSA.  (Doc. 1, p. 13).  He maintains that the denial of adequate medical care was due, in part, to the fact that Vienna has no full-time physician on staff and no nurse practitioner.  *Id*.  He also maintains that Wexford has failed to train the medical staff at Vienna and Shawnee about infectious disease control.  *Id*.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint (Doc. 1) into the following counts:

> **Count 1** - Eighth Amendment deliberate indifference to medical needs claim against the defendants for providing Plaintiff with inadequate medical care for his osteomyelitis and MRSA at Vienna and Shawnee from July 2015 through April 2016.
>
> **Count 2 -** First Amendment claim against the defendants for denying Plaintiff access to his mail during his treatment at Shawnee in 2015.

**Any other claims that are mentioned in the Complaint but not recognized herein are**

**considered dismissed without prejudice from this action.**

## Claim Subject to Further Review

### Count 1

The Eighth Amendment safeguards prisoners against a lack of medical care that may result in pain and suffering serving no penological purpose. *See* U.S. CONST., amend. VIII; *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citations omitted); *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). To state a claim based on the denial of medical care, a plaintiff must show that he suffered from an objectively serious medical condition and that the defendants were deliberately indifferent to a risk of serious harm posed by that condition. *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

An objectively serious medical condition is one that has been diagnosed by a physician as requiring treatment or one that would be obvious to a layperson. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)). *See also Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). A medical condition may also be considered objectively serious if it significantly affects an individual's daily activities or causes chronic or substantial pain. *Gutierrez*, 111 F.3d at 1373 (condition is objectively serious if the "failure to treat it could result in further significant injury or unnecessary and wanton infliction of pain"). The untreated infections described by Plaintiff in the Complaint are sufficiently serious to support an Eighth Amendment claim at screening. *See, e.g., Myrick v. Anglin*, 496 F. App'x 670 (7th Cir. 2012) (inmate adequately alleged that his untreated herpes, hernia, and MRSA were serious medical conditions); *Osbey v. Health Prof. Ltd.*, 2009 WL 175041, at *10 (C.D. Ill. 2009) ("Plaintiff's osteomyelitis is clearly a serious medical need" given that "[e]very physician who examined Plaintiff mandated treatment.").

The question becomes whether the defendants exhibited deliberate indifference to his serious medical condition. Deliberate indifference is shown when prison officials "know of and disregard an excessive risk to inmate health." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). They must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). An inmate is not entitled to "demand specific care" or "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). However, a delay in treatment may constitute deliberate indifference, if the delay exacerbates the injury or unnecessarily prolongs an inmate's pain. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012); *Farmer*, 511 U.S. at 842.

The Complaint suggests that the following defendants responded to Plaintiff's serious medical condition with deliberate indifference: Nurse Rungy, Nurse Stafford, Nurse Murphy, Nurse Blake, Doctor Adams and Doctor Alphonso. Plaintiff complained to each of these defendants about his shoulder infection, the wound developing on his side and his pain. The nurses allegedly ignored Plaintiff's complaints because he would not pay another copayment for their services. The doctors allegedly returned Plaintiff to the general prison population or terminated his treatment while he still suffered from an active, progressive infection.

The imposition of a "modest fee for medical services, standing alone, does not violate the Constitution." *Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012). The Seventh Circuit has pointed out that "[t]he Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." *Poole*, 703 F.3d at 1026. An inmate who "opt[s] to refuse treatment rather than part with his money" cannot prevail on an Eighth Amendment claim because "[e]ven though he was in pain until he

received treatment, the delay in receiving care was of his own making." *Id*. at 1027.

But this holding applies to inmates who "are able to contribute to the cost of their care." *Poole*, 703 F.3d at 1026. *See also Hightower v. Godinez*, 524 F. App'x 294 (7th Cir. 2013) ("[I]t is not deliberate indifference for prison medical professionals to insist that inmates *who are financially able* tender a required co-payment before receiving care.") (emphasis added). Here, it is unclear whether Plaintiff had sufficient funds to pay the copayment for each of his medical appointments.

Moreover, these defendants conditioned the receipt of *any* medical care on Plaintiff's payment of the fee even after he allegedly presented them with symptoms of active infection, a mass on his shoulder, an oozing hip wound and pain that was ultimately diagnosed as osteomyelitis and MRSA. The general rule regarding copayments is not without limits. Both the Seventh Circuit and the United States Supreme Court have recognized this: "*[A]s long as the governmental entity ensures that the medical care needed is in fact provided*, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care." *Poole*, 703 F.3d at 1027 (quoting *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 245 (1983) (emphasis added)). Plaintiff alleges that care was denied outright or discontinued despite his ongoing symptoms and repeated complaints of active infection and persistent pain. Given this, the Court cannot dismiss the Eighth Amendment deliberate indifference claim against the nurses and doctors. Count 1 shall therefore receive further review against Nurse Rungy, Nurse Stafford, Nurse Murphy, Nurse Blake, Doctor Adams, and Doctor Alphonso.

The Complaint also supports a claim against Warden Campanella, who allegedly received emergency grievances from Plaintiff dated July 27th, July 31st, and August 9th. According to

the Complaint, Plaintiff prepared emergency grievances immediately after he was refused treatment by the defendants. Although he does not include a copy of the grievances with his Complaint, Plaintiff makes it clear that he described his symptoms, his pain and the urgency of the situation to Warden Campanella and received no response. These allegations are sufficient to state a claim against the warden at screening. *See Perez*, 792 F.3d at 781-82.

The same cannot be said of the allegation against Warden Etienna, Shawnee's warden. Plaintiff alleges that the warden cancelled his appointment with a specialist on December 7, 2015. It is not clear why the appointment was cancelled or whether it was rescheduled. As such, the factual allegations offered in support of this claim against Warden Etienna are insufficient to support a claim of deliberate indifference against this individual. At most, it appears that this defendant may have been negligent. However, "negligence or even gross negligence does not constitute deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). Count 1 shall therefore be dismissed without prejudice against Warden Etienna.

Plaintiff shall also be allowed to proceed with his Eighth Amendment claim against Wexford Health Care Services, the private corporation that serves as the healthcare provider at Vienna and Shawnee. But he cannot rely on a theory of *respondeat superior* when bringing a claim against this defendant under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 795-96 (7th Cir. 2014). A private corporation will generally only be held liable under § 1983 for an unconstitutional policy or custom that results in a constitutional deprivation. *Perez*, 792 F.3d at 780 (citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2014)).

Plaintiff's Complaint describes three policies that could have resulted in the delay or denial of medical care: (1) the policy conditioning the receipt of medical services on the payment

of a $5.00 copay; (2) Wexford's policy of sending inmates to Shawnee for medical care instead of employing a full-time physician and nurse practitioner at Vienna; and (3) Wexford's failure to train its employees on infectious disease control. Whether any of the policies is to blame for the delay or denial of treatment in this case remains to be seen. However, because the alleged policies are "capable of causing delays in treatment—which could result in a constitutional deprivation"—the claim against Wexford survives screening. *See Perez*, 792 F.3d at 780 (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). For pleading purposes, Plaintiff has stated a viable claim against Wexford on these grounds.

In summary, Count 1 is subject to further review against Defendants Campanella, Rungy, Stafford, Murphy, Adams, David, Blake, and Wexford. However, this claim shall be dismissed without prejudice against Defendant Etienna.

### Claim Subject to Dismissal

### Count 2

The Complaint articulates no viable claim against the defendants for denying Plaintiff access to his mail while he received treatment for osteomyelitis at Shawnee. In one sentence of the Complaint, Plaintiff alleges that he did not receive his mail. (Doc. 1, p. 11). He named no one in connection with this claim. Section 1983 creates a cause of action based on personal liability and predicated upon fault. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). "[T]o be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Id*. at 810. Having failed to identify any particular defendant who was responsible for denying him mail, Plaintiff states no claim upon which relief may be granted.

Even if he had named a defendant, the Complaint still lacks sufficient allegations to support a claim based on the denial of mail. The First Amendment "applies to communications between an inmate and an outsider." *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000). However, a sporadic disruption of mail service does not violate the Constitution. *Id*. A valid claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Id*.; *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Sizemore v. Wiliford*, 829, F.2d 608, 610 (7th Cir. 1987). In this case, it is unclear how long the denial lasted, whether Plaintiff should have received mail during this time period, or the type of mail he would have received (*e.g.*, personal or legal). Given that this claim is undeveloped, it cannot proceed and shall be dismissed without prejudice.

### Claims Against Non-Parties

In his statement of claim, Plaintiff mentions the names of numerous individuals who are not named as defendants in this action. The list of these individuals includes, but is not limited to the following: a nurse (July 21st), Officer Koehler (August 4th), Officer Gurley (August 6th), Officer Ellis (August 7th), Officer Jaco (August 9th), Officer Choates (August 11th), Officer Dent (August 11th), Penny George (August 11th), and Warden Hillyard (August 11th). When parties are not listed in the caption of a Complaint, this Court will not treat them as defendants. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). Accordingly, any claims against these individuals are considered dismissed without prejudice from this action.

### Pending Motions

1. **Motion for Service of Process at Government Expense (Doc. 2)**

Plaintiff filed a Motion for Service of Process at Government Expense, which is **DENIED**. The motion is unnecessary. Plaintiff is a state inmate who has been granted leave to proceed in this action *in forma pauperis*. Under the circumstances, service is ordered as a matter of course.

**2.    Motion for Recruitment of Counsel (Doc. 3)**

Plaintiff also filed a Motion for Recruitment of Counsel, which shall be referred to United States Magistrate Judge **Reona J. Daly** for a decision.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** is **DISMISSED** without prejudice against Defendant **CAMILLE ETIENNA** for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 2** is **DISMISSED** without prejudice against all of the defendants on the same ground.

**IT IS FURTHER ORDERED** that **COUNT 1** is subject to further review against Defendants **CAMPANELLA, RUNGY, STAFFORD, MURPHY, ADAMS, DAVID, BLAKE,** and **WEXFORD HEALTH CARE SERVICES**. As to **COUNT 1**, the Clerk of Court shall prepare for these defendants: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 7, 2017**

                        **s/STACI M. YANDLE**
                        **U.S. District Judge**