IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CURTIS PENDEGRAFT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-CV-447-SMY |
| | ) |
| JEANNE CAMPANELLA, TRACIE | ) |
| SANFORD, KEVIN MURPHY, | ) |
| ALPHONSO DAVID, BLAKE WOODS, | ) |
| WEXFORD HEALTH SOURCES, INC, | ) |
| and WILLIAM RANKIN, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Curtis Pendegraft, who was formerly incarcerated in the Illinois Department of Corrections, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 claiming Defendants were deliberately indifferent to his serious health needs while he was incarcerated at Vienna Correctional Center, Shawnee Correctional Center, and East Moline Correctional Center from 2015 to 2016 (Doc. 41). Specifically, he alleges that Defendants failed to adequately treat osteomyelitis and MRSA in his right shoulder and hip (Count I) (*Id.*).

Now pending before the Court are Defendants William Rankin, Alfonso David, Blake Woods, and Wexford Health Source, Inc.'s ("Wexford") Motion for Summary Judgment (Doc. 132) and Defendants Jeanne Campanella, Kevin Murphy, and Tracie Sanford's Motion for Summary Judgment (Doc. 152). Pendegraft filed a response in opposition (Doc. 160). For the following reasons, the Motions are **GRANTED**.

**Background**

The following relevant facts are undisputed: Pendegraft was housed at Vienna from February 13, 2015 to August 27, 2015 where Defendant Jeanne Campanella was the warden. Before arriving at Vienna, he was told by a doctor that he would need to be on antibiotics (in pill form) for the rest of his life to treat his infections (Doc. 133-1, p. 4). While at Vienna, Pendegraft was under the care of Defendant Dr. Alphonso David and Nurses Kevin Murphy and Tracie Stafford were working in Vienna's healthcare unit. Dr. David ordered an x-ray of Pendegraft's right shoulder and scapula on July 30, 2015 (Doc. 133-2, p. 17). The x-ray report noted lucency (low density) in the humeral (upper arm bone) head, "osteomyelitis not excluded," and "some adenopathy in the right axillary region" (*Id*.). Pendegraft appeared at the healthcare unit on July 30 and 31, 2015 and requested medical care (bandages and a review of the x-ray) but refused to pay the required $5.00 copay and was not seen (Doc. 152-5, pp. 4, 6). Murphy and Stafford noted Pendegraft's refusal in his medical records (*Id*.).

Upon Pendegraft's transfer to Shawnee, an Offender Health Status Transfer Summary noted a non-healing wound on his right hip and that he was currently on antibiotics – Vancomycin Clindamycin (Doc. 133-2, p. 2). These antibiotics were continued at Shawnee (*Id*. 3).[1] During his time at Shawnee, Pendegraft was regularly given bandages and told to cover his hip wound (Doc. 133-1, p. 8). Dr. David, also Pendegraft's medical provider at Shawnee, ordered additional x-rays. X-rays taken on September 10 and September 21, 2015 revealed a "Hill-Sach deformity" (an old fracture) in the humeral head and clavicular osteolysis (Doc. 133-2 , pp. 18-9). Dr. David also requested an MRI on September 24, 2015 (*Id*. 8). The MRI was performed on October 22, 2015 and showed signs of osteomyelitis (*Id*. 6). On October 27, 2015, Pendegraft's intravenous

---

[1] Pendegraft believes that he contracted a MRSA infection when transferred to Shawnee (Doc. 133-1, p. 7-8).

antibiotics[2] were continued for 10 days.  He was referred to an orthopedic surgeon by Defendant Blake Woods, a nurse practitioner, after Dr. David requested the consult and it was approved through Wexford's collegial process with Dr. Ritz, who is part of Wexford's utilization management (*Id*. 9-10).

The specialist, Dr. Kevin Koth, of The Orthopaedic Institute of Southern Illinois, examined Pendegraft on November 13, 2015 (*Id*. 11).[3]  Dr. Koth diagnosed chronic right shoulder pain and right rotator cuff tendonitis and recommended referral to a shoulder specialist (*Id*. 14).  The shoulder specialist, Dr. J.T. Davis, recommended that Pendegraft be seen by an infectious disease specialist on December 17, 2015 (*Id*. 42).  Pendegraft was subsequently seen by Dr. Anupam Pande, an infectious disease specialist, on January 21, 2016 (*Id*. 45).  Dr. Pande concluded that Pendegraft's shoulder osteomyelitis was not currently active, that his chronic pain was from secondary osteoarthritis, that it was unclear whether his hip osteomyelitis was active, and that additional diagnostic tests of the hip were required (x-ray and possible MRI) (*Id*. 46).  He indicated that no intravenous antibiotics were necessary at the time (*Id*. 44).  This conclusion was echoed by Dr. Christopher McAndrew, an orthopedic specialist.  No surgery or follow up care was recommended (*Id*. 49-50).  The x-ray recommended by Dr. Pande was taken on January 25, 2016 (*Id*. 29).  A subsequent MRI of Pendegraft's shoulder was taken; upon an April 7, 2016 review, Dr. McAndrew found no evidence of infection and did not recommend debridement or surgery (*Id*. 53).  Throughout April 2016, Pendegraft's wounds were dressed and he was instructed on dressing changes related to his MRSA infection (*Id*. 33-37).

---

[2] The medical record and Pendegraft's deposition testimony are vague on when oral antibiotics and intravenous antibiotics were stopped and started.  However, it is undisputed that during Pendegraft's incarceration, he was receiving some form of antibiotics, although perhaps not on a daily basis.
[3] Pendegraft testified that his medical records and test results were not transferred to the specialist for review (Doc. 133-1, p. 12).

Pendegraft was transferred to East Moline on April 27, 2016. At East Moline, Pendegraft's MRSA infection was being treated by Dr. William Rankin, among others. Pendegraft was given antibiotics, directed to shower in the health care unit, and given bandages to dress the wound (Doc. *Id*. 40-41). A wound culture taken on June 21, 2017 revealed the continuing presence of MRSA and Pendegraft was prescribed Bactrim and instructed to keep the wound covered (*Id*. 21-22).

Pendegraft was transferred to Vandalia Correctional Center on August 19, 2017. His conditions were treated and began getting markedly better (Doc. 133-1, p. 13). When he was released from incarceration in July 2018, he did not have an active bone or MRSA infection (*Id*. 13-14).

## Discussion

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing there is a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Prison officials violate the Eighth Amendment if they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). To prevail on a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

Here, it is undisputed that Pendegraft suffered from a serious medical condition. As such, the subjective element requires proof that a defendant knew of but disregarded the risks associated with his condition. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Pendegraft argues that Defendants Rankin, Woods, and Dr. David failed to adequately treat his infections because they failed to provide a constant supply of antibiotics, did not segregate him from other inmates to reduce the risk of infection, ignored specialists' advice, and failed to transfer medical records.

A medical professional's response to an inmate's medical needs violates the Eighth Amendment when "no minimally competent professional would have so responded under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (quotation marks and citation omitted). Significantly, Pendegraft does not cite to any specific portion of the record to support his claims against Defendants Rankin, Woods, or Dr. David. Nor does he identify any evidence supporting his claims against Defendants Wexford, Campanella, Sanford or Murphy. To successfully oppose summary judgment, "the non-moving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020) (citation and quotation marks omitted). Pendegraft has not done so.

Throughout his incarceration, Pendegraft's shoulder, hip, and MRSA infections were treated with antibiotics, referrals to specialists, diagnostic tools (as recommended by specialists), and bandages. While Pendegraft hints that he was not given a constant supply of necessary antibiotics or bandages and that he was not isolated from other inmates, he is entitled to receive "reasonable measures to meet a substantial risk of serious harm," *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011), but is not entitled to demand specific care. And, to the extent Pendegraft

alleges that any defendant delayed treatment, there is no evidence that any treatment delay was the result of Defendants' actions or that any delay resulted in any adverse consequence. *Petties*, 836 F.3d at 730-1 ("To show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain."). In sum, there is no evidence that any medical provider's treatment was blatantly inappropriate, or a significant departure form accepted professional standards. *See Pyles,* 771 F.3d at 409.[4]

Finally, Pendegraft's claim that Wexford employed unconstitutional policies of requiring a $5.00 payment for medical care, understaffing the medical positions, and failing to maintain adequate facilities also fails as a matter of law. In order to prevail on this claim, Pendegraft must provide evidence that Wexford acted pursuant to an unconstitutional policy or custom, *Whiting v. Wexford Health Sources*, *Inc.*, 839 F.3d 658, 664 (7th Cir. 2016), and that the policy was the moving force behind the constitutional violation. *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002) (quoting *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)). Pendegraft has presented no evidence that Wexford has a policy, written or otherwise, of requiring payment for necessary medical care, understaffing medical positions, or failing to provide adequate facilities. Indeed, he offers no argument to support this claim.

---

[4] Given this conclusion, it is not necessary for the Court to address Defendant Campanella, Murphy, or Sanford's argument that they are entitled to qualified immunity.

## Conclusion

For the foregoing reasons, Defendants Rankin, David, Woods, and Wexford's Motion for Summary Judgment (Doc. 132) is **GRANTED** and Defendant Campanella, Murphy, and Sanford's Motion for Summary Judgment (Doc. 152) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

**IT IS SO ORDERED.**

**DATED:  August 31, 2021**

*Staci M. Yandle*

**STACI M. YANDLE**
**United States District Judge**